IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| SHAWN LEE WHITENIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CV-00646-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| THOMAS ELBEL, WARDEN JEFFERSON | ) | |
| COUNTY JAIL; PRIME CARE MEDICAL, | ) | |
| MEDICAL VENDER JEFFERSON | ) | |
| COUNTY JAIL; SUSAN ROSSINO, M.D. | ) | |
| JEFFERSON COUNTY JAIL; JILL | ) | |
| CLARK, PA-C, SITE MANAGER | ) | |
| JEFFERSON COUNTY JAIL; JENIPHER | ) | |
| PURCE, L.P.N.; AND DR. TERRI | ) | |
| CALVERT, | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.     INTRODUCTION

Presently before the court are the following:

(1) Defendants Jill Clark and Prime Medical Care's motion to dismiss [ECF No. 44];

(2) Defendant Susan Rossino's motion to dismiss [ECF No. 46];

(3) Defendant Thomas Elbel's motion to dismiss [ECF No. 48]; and

(4) Defendants Terri Calvert and Jenipher Purce's motion to dismiss [ECF No. 85].

The motions are fully briefed and ripe for disposition. *See* ECF Nos. 44, 45, 46, 47, 48, 49,

57, 58, 60, 65, 71-7, 85, 86, 90 and 92.  For the reasons that follow, the motions are granted in part

---

[1]     All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

1

and denied in part.

## II.    BACKGROUND[2]

Plaintiff initiated the present civil rights action for alleged conduct while he was incarcerated as a pre-trial detainee in the Jefferson County Jail ("JCJ"). Plaintiff names the following individuals: Thomas Elbel, the Warden of JCJ ("Warden Elbel"); Prime Care Medical, the medical provider at JCJ; Susan Rossino, M.D. ("Dr. Rossino"); Terri Calvert, M.D. ("Dr. Calvert"); Jill Clark, PA-C ("PA-C Clark"); and Jenipher Purce, L.P.N. ("L.P.N. Purce").

According to Plaintiff's complaint, Plaintiff was incarcerated at JCJ from December 17, 2013 to June 3, 2014. He generally alleges that he was not given adequate medical care and placed in solitary confinement in violation of his constitutional rights.

Prior to Plaintiff's incarceration, he was involved in a motor vehicle accident in 2002 which resulted in injury to his spine. In October 2011, Plaintiff broke his T-10 disc in his spine. Plaintiff underwent physical therapy for his T-10 injury. Thereafter, Plaintiff was diagnosed with ankylosing spondylitis and Plaintiff's physician recommended that Plaintiff receive "trigger point injections" or see a Rheumatologist. *See* Exhibit O to Declaration of Shawn Lee Whitenight [ECF No. 58-5 at 2]. Another physician discounted Plaintiff's diagnosis of ankylosing spondylitis and diagnosed Plaintiff with chronic myofascial pain syndrome and prescribed Plaintiff pain medication, which Plaintiff took for a period of two years. A few weeks prior to Plaintiff's arrest and incarceration in 2013, he was approved to receive injections of Enbrel, but never began that

---

[2]    Plaintiff's complaint is vague as it is comprised mostly of legal conclusions, conflates causes of action and does not paint the entire reasoning behind Plaintiff's claims. However, because of the leniency afforded to *pro se* litigants, and because Plaintiff is entitled to all reasonable inferences drawn in his favor, the factual background of this opinion is compiled from the entirety of the record, including the numerous exhibits Plaintiff attached to his original complaint.

treatment. On December 5, 2013, Plaintiff was experiencing pain in his back and numbness in his hands and feet and an MRI was taken which showed a bulging disc in his cervical spine at the C-4 disc, and the treating physician recommended that Plaintiff follow up with a surgeon.

On or about December 17, 2013, Plaintiff attempted to surrender himself to the Brooksville Police Station and alleges that he suffered injuries due to excessive force and "retaliatory action." Third Am. Compl. [ECF No. 41] at ¶ 10. Plaintiff does not specify what those injuries were or what excessive force or retaliatory actions were taken against him. However, it is immaterial what transpired at Plaintiff's surrender, because no officers or entities related to the Brooksville Police Station are part of this action. Plaintiff was then transferred to Jefferson County Jail as a pretrial detainee and was held there from December 17, 2013 to June 3, 2014.

Plaintiff's allegations encompass two separate events: first, Plaintiff alleges that he requested outside medical testing for his prior spinal injuries and waited six months in order to receive an MRI scan. Plaintiff received an MRI and was referred to a neurosurgeon, however before Plaintiff was able to see the neurosurgeon, he was transferred from JCJ to SCI Pittsburgh. Plaintiff alleges that he was transferred because JCJ did not want to incur the cost of his medical care; second, Plaintiff alleges that he was placed in solitary confinement on two occasions which included "suicide protocol." Third Am. Compl. [ECF No. 41] at ¶ 14. It is unclear from the complaint what "suicide protocol" entails. Each incident will be detailed separately.

a. Plaintiff's Medical Care

Plaintiff alleges that he submitted several sick calls with the medical department for his medical issues during his incarceration at JCJ and generally alleges that the medical department would not "send him out" to be reexamined and delayed his requests for an MRI.

Plaintiff was scheduled for outside medical testing including an MRI scan at Brookville

3

Hospital on May 12, 2014. However, Plaintiff was concurrently scheduled for jury selection in his criminal trial and could not attend the scheduled MRI. Two days later, on May 14, 2014, Plaintiff was transported to Brookville Hospital and underwent an MRI scan. Plaintiff alleges that the MRI results showed that he had the following injuries: "cervical level 3/4 paracentral disc protrusion impressing upon the cervical spinal chord[sic] and a lumbar level 4/5 mild diffuse disc bulge with a [illegible] central disc protrusion slightly narrowing the spinal chord[sic]." Third Am. Compl. [ECF No. 41] at ¶ 24.

Plaintiff sent a copy of the May 14, 2014 MRI results to a third party medical institute for a "second opinion" of his injuries. Sometime thereafter, the JCJ received a pre-examination form from a neurosurgeon at University of Pittsburgh Medical Center ("UPMC") and on May 19, 2014, Plaintiff completed the form for the consultation with the UPMC neurosurgeon. Plaintiff alleges that an appointment was scheduled with the UPMC neurosurgeon between May 22 and May 23, 2014. Plaintiff also alleges that the JCJ medical staff had to submit a request to Warden Elbel to approve Plaintiff's transport, and he alleges that he was "denied attendance" to the May 22 or 23, 2014 neurosurgeon appointment. Plaintiff's neurosurgeon appointment was rescheduled for June 3, 2014. However, instead of transporting Plaintiff to his neurosurgeon appointment, he was transported to SCI Pittsburgh who then took custody of him. Plaintiff alleges that upon entering SCI Pittsburgh, the intake officers told Plaintiff that he was not on the schedule to enter state custody as of that date and there was no prior notification from JCJ of Plaintiff's change of custody.

Plaintiff was subsequently transferred to SCI Greene and received medical treatment. He alleges that he was diagnosed with "permanent nerve damage causing pain and head/scalp numbness that is caused by the failure of treatment within 60 days from when the symptoms started." Third Am. Compl. [ECF No. 41] at ¶ 49.

b. <u>Solitary Confinement</u>

The first instance in which Plaintiff was placed into solitary confinement, he alleges that it was a result of a misinterpretation of his answer to the question of whether he was a danger to himself. Plaintiff responded "I just submitted to medical to receive Vitamin D pills because my levels are low, I don't think so." Third Am. Compl. [ECF No. 41] at ¶ 14. Plaintiff alleges that within ten minutes of answering this question, prison officials placed him in suicide protocol. Plaintiff does not provide any insight as to what "suicide protocol" entails, but the court can infer that suicide protocol at least involved placing Plaintiff into solitary confinement or some sort of restrictive housing. On the second occasion, Plaintiff informed L.P.N. Purce that he was initiating law suits against the JCJ medical professionals and filing complaints with the Pennsylvania medical licensing board to have their licenses removed for denying him medical treatment. He alleges that ten minutes after he made these comments, prison officials came to remove Plaintiff and placed him in "suicide protocol" again. Plaintiff claims that when he was being transported into solitary confinement, a corrections officer advised him that Warden Elbel ordered the action to place him in solitary confinement.

While Plaintiff does not specifically enumerate his causes of action, because of the leniency afforded to *pro se* litigants, the court will read his Third Amended Complaint as asserting the following claims:

(1) A Fourteenth Amendment claim[3] pursuant to 42 U.S.C. § 1983 against the individual defendants Warden Elbel, Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce for their alleged deliberate indifference to Plaintiff's serious medical needs;

---

[3]     While Plaintiff purports to bring this claim under the Eighth Amendment, the Fourteenth Amendment applies to claims of deliberate indifference to serious medical needs of pretrial detainees. *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003)

(2) A Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 against the individual defendants Warden Elbel, Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce for placing Plaintiff in solitary confinement/suicide protocol;

(3) A First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 against the individual defendants Warden Elbel, Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce for their alleged retaliation for placing Plaintiff into solitary confinement after he complained about not receiving medical care;

(4) A *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658 (1978) municipal liability claim pursuant to 42 U.S.C. § 1983 against Prime Care for allegedly having a policy, practice or custom of denying or delaying medical treatment to pretrial detainees;

(5) A 42 U.S.C. § 1983 conspiracy claim against each Defendant for failing to provide him with adequate medical care;

(6) A state law claim for intentional infliction of emotional distress against each Defendant;

(7) A state law claim for negligent infliction of emotional distress against each Defendant;

(8) A state law claim for medical negligence against Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce; and

(9) A state law claim for corporate negligence against Defendant Prime Care.

Plaintiff seeks a declaration that the Defendants' acts and omissions violated his constitutional rights, a preliminary and permanent injunction ordering Defendants to cease all "administrative schemes" which relate to the denial of medical care, and for this court to send "all information" to the Pennsylvania medical licensing board and state and federal authorities for investigations, sanctions and contract terminations, nominal and compensatory damages and punitive damages in the amount of one million dollars.

### III. STANDARD OF REVIEW

#### a. *Pro Se Litigants*

*Pro se* pleadings are held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). In other words, if the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

#### b. *Prison Litigation Reform Act ("PLRA")*

Plaintiff's Third Amended Complaint must be reviewed in accordance with the amendments promulgated in the PLRA. In the PLRA, Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. *See Santana v. United States*, 98 F.3d 752, 755 (3d Cir. 1996). The PLRA permits courts to screen complaints filed by prisoners and dismiss them *sua sponte* at any time if the complaint fails to state a claim upon which relief may be granted. 28

U.S.C. § 1915(e).

### c. Motion to Dismiss Pursuant to Rule 12(b)(6)

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

## IV. DISCUSSION

### a. Injunctive Relief

Plaintiff seeks declaratory and injunctive relief in his Third Amended Complaint. Third Am. Compl. [ECF No. 41] at ¶¶104-106. However, as stated by Plaintiff in his Third Amended Complaint, he has not been incarcerated at JCJ since June 3, 2014. *Id*. at ¶¶ 31-33. A pretrial detainee's transfer to another institution moots a claim for injunctive and declaratory relief because the inmate is no longer subject to the conditions he alleges are unconstitutional. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir.1993); *see also Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir.1981) ("[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge.")). Plaintiff was transferred from JCJ on or about June 3, 2014 to SCI Pittsburgh and was then transferred to SCI Greene. Sometime thereafter, Plaintiff was released from incarceration. *See* 10/24/2017 Notice of Change of Address [ECF No. 95]. While this transfer and release moots Plaintiff's claims for declaratory and injunctive relief, it does not moot his claims for damages. *See United States ex rel. Jones v. Rundle*, 453 F.2d 147, 150 (3d Cir.1971); *Wilson v. Prasse*, 404 F.2d 1380, 1381 (3d Cir. 1968). Therefore, because Plaintiff is no longer subject to the conditions of CJC by virtue of his transfer and release, he does not have standing to seek injunctive or declaratory relief here. Accordingly, Plaintiff claims for injunctive and declaratory relief are dismissed with prejudice, as amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

### b. Statute of Limitations

The Defendants argue that all of Plaintiff's claims are barred by the applicable statute of limitations because Plaintiff sustained injuries on or about December 17, 2013 and began treatment with the Defendants on that date, so he knew or should have known of his injury because that is

when the allegedly inadequate care began.

A statute of limitations defense may be brought by a Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Hanna v. United States Veterans Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975). The applicability of the statute of limitations often involves questions of fact for the jury and the party invoking the statute of limitations defense "bear[s] a heavy burden in attempting to establish as a matter of law that the challenged claims are time-barred." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999). If it is not "apparent on the face of the complaint" that the statute of limitations bars the action, then the defense does not serve as a basis for dismissal under Rule 12(b)(6). *Id.*

In 42 U.S.C. § 1983 claims, the statute of limitations is borrowed from the general personal injury statute of limitations of the state in which it sits. *See Owens v. Okure*, 488 U.S. 235, 249–51 (1989). In Pennsylvania, the statute of limitations for personal injury actions is two years. *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003) (citing 42 Pa. Cons. Stat. § 5524(7)). Likewise, there is a two-year statute of limitations for Plaintiff's state law claims of medical negligence, corporate negligence, intentional infliction of emotional distress, negligent infliction of emotional distress and civil conspiracy claims under Pennsylvania law. *See* 42 Pa. Const. Stat. § 5524. Therefore, Plaintiff had two years from the time his cause of action accrued to file his complaint. A cause of action under section 1983 accrues when a plaintiff knew or should have known that his rights were violated. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

While Defendants may be correct that Plaintiff should have known of his injury on December 17, 2013, as that is when he began receiving treatment from JCJ, for the court to accept

that version of events, it would require the court to impermissibly weigh the facts surrounding the origin of Plaintiff's cause of action and glean what Plaintiff knew or should have known at that particular time. There are issues of fact concerning when Plaintiff's injuries accrued and when Plaintiff knew or should have known that his rights were violated, and if this occurred prior to May 19, 2014 – two years before Plaintiff's complaint was filed – which require greater factual development. These issues are not properly resolved in a Rule 12(b)(6) motion and must be addressed at summary judgment, or if necessary, at trial. Accordingly, the Defendants' motions will be denied in this respect.

     c.  <u>42 U.S.C. § 1983</u>

Plaintiff makes a myriad of constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983").[4] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

42 U.S.C. § 1983. To state a claim under section 1983, Plaintiff must show that the individual sued acting under color of state law violated his federal constitutional or statutory rights. *West v.*

---

[4]     Plaintiff also includes a paragraph in his Third Amended Complaint which purports to allege that the Defendants are liable to him under the Pennsylvania Constitution. *See* Third Am. Compl. [ECF No. 41] at ¶ 99. Any claim which Plaintiff purports to state under the Pennsylvania Constitution against the Defendants is dismissed with prejudice, as there is no Pennsylvania statute that establishes and no Pennsylvania court has recognized "a private cause of action for damages under the Pennsylvania Constitution." *Pocono Mountain Charter School v. Pocono Mountain School Dist.*, 442 Fed.Appx. 681, 687 (3d Cir. 2011) (citing *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa.Commw. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")). Moreover, because the court has found that Plaintiff is not entitled to injunctive relief on his claims, any such claim for injunctive or declaratory relief under the Pennsylvania Constitution is likewise dismissed with prejudice. *See Jones*, 890 A.2d at 1216.

*Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

In order for a plaintiff to adequately state a claim under section 1983, he must establish that the defendant deprived him of a right secured by the United States Constitution acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). A plaintiff alleging a constitutional violation "must portray specific conduct by [] officials which violates some constitutional right." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). By doing so, a plaintiff must demonstrate a defendant's "personal involvement" in the alleged constitutional violation by adequately alleging either (1) the defendant's personal involvement in the alleged violation; or (2) his actual knowledge and acquiescence in the wrongful conduct. *Id.* (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Id.* (citations omitted).

Plaintiff's claims fall under the First and Fourteenth Amendments to the United States Constitution. Each claim will be separately addressed.

### i. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that the individual defendants were deliberately indifferent to his serious medical needs by denying him medical care for non-medical reasons and that Prime Care had a policy or custom of denying medical care to pretrial detainees as a cost-savings measure.

For purposes of analyzing Plaintiff's medical deliberate indifference claim, the legal analysis is the same whether Plaintiff was a pretrial detainee or a convicted person. The United States Court of Appeals for the Third Circuit has indicated that a pretrial detainee's right to adequate medical care should be analyzed under the well-settled standard established in *Estelle v. Gamble*, 429 U.S. 97 (1976), which compels prison officials to provide "basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle*, 429 U.S. 97 (1976)). *See also Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (analyzing pretrial detainee's claim of inadequate medical treatment under the Due Process Clause of the Fourteenth Amendment and not the Eighth Amendment's proscription against cruel and unusual punishment).

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." *Estelle,* 429 U.S. at 103. The "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted). Such indifference to a serious medical need can be shown by:

> an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

*Neiswonger v. Montgomery*, 2016 WL 7375032, at *3 (W.D. Pa. Dec. 20, 2016). *See also Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care."). *Foye v. Wexford Health Sources Inc*., 675 F. App'x 210, 215 (3d Cir. 2017) ("Deliberate indifference" may be inferred when a prison official knows of a prisoner's need for medical treatment but intentionally fails to provide it; delays

necessary medical treatment for a non-medical reason; or prevents a prisoner from receiving medical treatment that was needed or recommended.").

"[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05 (citations omitted). A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id.* The "deliberate indifference" a plaintiff must show through a complaint's factual allegations lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other," *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994), and is frequently equated with recklessness as that term is defined in criminal law. *Id.* This standard, however, "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Where a prisoner has received medical care and the adequacy of the treatment is challenged, courts are often reluctant to second guess professional medical judgment. *Id.* An inmate's disagreement with the diagnosis or course of treatment does not suffice to establish "deliberate indifference" under the Eighth Amendment. *Estelle*, 429 U.S. at 106. Misdiagnosis or "medical malpractice cannot give rise to a violation of the Eighth Amendment," *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir.1990), because negligent treatment is not actionable as cruel

and unusual punishment prohibited by the Eighth Amendment. *See also Wilson v. Seiter*, 501 U.S. 294, 305 (1991) (mere negligence does not constitute deliberate indifference)

The Supreme Court in *Estelle v. Gamble* explained:

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. at 105–06.

In the instant matter, Plaintiff alleges that the Defendants were deliberately indifferent to his serious medical needs for multiple reasons. First, Plaintiff alleges that he had to wait six months to receive an MRI or be referred to a specialist for his spinal injuries. It is plausible that evidence could reveal that Plaintiff's medical treatment was delayed for non-medical reasons or that Dr. Rossino, Dr. Calvert, PA-C Clark and/or L.P.N. Purce continued a course of treatment they knew was "painful, ineffective, or entail[ed] a substantial risk of serious harm." *Williams v. Kort*, 223 Fed.Appx. 95, 100 (3d Cir. 2007) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (additional citations omitted)). Therefore, Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce's motions to dismiss will be denied in this respect for Plaintiff to discover evidence that this six-month delay in failing to order an MRI or refer Plaintiff to a specialist constitutes deliberate indifference. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (if physician exercises professional judgment, physician's behavior will not violate prisoner's constitutional rights). As for Warden Elbel, Plaintiff has not adequately alleged that Warden Elbel was personally involved in any decision to wait six months to order an MRI for Plaintiff and/or

refer him to a specialist, and this claim will be dismissed with prejudice as to this defendant, as amendment would be futile. *See Grayson*, 293 F.3d at 114.

Next, Plaintiff alleges that he was denied medical treatment for non-medical reasons, namely, because the Defendants did not want to incur the costs of his medical care. Plaintiff has failed to state a claim in this regard. Primarily, Plaintiff's naked assertion that Defendants "considered cost in treating" Plaintiff's spinal injuries is not sufficient to state a claim for deliberate indifference, "as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow v. Prison Health Services*, 406 Fed.Appx. 671, 674 (3d Cir. 2011) (collecting cases). Thus, Plaintiff's claim that Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce considered cost in treating Plaintiff does not adequately state a deliberate indifference claim and is dismissed with prejudice, as amendment would be futile. *See Grayson*, 293 F.3d at 114.

With respect to Plaintiff's allegation that Prime Care has a policy or custom of denying pretrial detainees outside or referral medical care and should be liable under *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658 (1978), Plaintiff provides no allegation of what those policies are, what basis he has for believing that these cost-saving policies "affected his medical treatment," or "what specific treatment he was denied as a result of these policies." *Winslow*, 406 Fed. Appx. at 674. The crux of Plaintiff's complaint is that he should have been able to continue that course of treatment while being held as a pretrial detainee, regardless of the costs associated with that treatment. However, Plaintiff has no constitutional right to a particular course of treatment and the bare assertion that cost was considered in his treatment decision while in JCJ does not rise to the level of a constitutional violation. Thus, Plaintiff's *Monell* claim that

Prime Care had a policy or custom of denying medical care because of the cost of treatment is dismissed with prejudice, as amendment would be futile. *See Grayson*, 293 F.3d at 114.

Next, Plaintiff alleges that the rescheduling of his MRI and subsequent transfer to SCI Pittsburgh prior to attending a scheduled appointment with a neurosurgeon violated his constitutional rights. To the extent that Plaintiff believes that this is a separate constitutional violation, this claim is dismissed with prejudice, as amendment would be futile. *See Grayson*, 293 F.3d at 114. Scheduling conflicts and the rescheduling of medical appointments does not amount to deliberate indifference.

Accordingly, the only claim for deliberate indifference that remains is Plaintiff's claim against Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce as to whether their decision to wait six months to order an MRI for Plaintiff and/or refer him to a specialist was deliberate indifference to his serious medical needs. All other claims of deliberate indifference against the Defendants are dismissed with prejudice, as Plaintiff has previously amended his complaint and further amendment would be futile. *See Grayson*, 293 F.3d at 114.

> *ii. Due Process – Placement in Solitary Confinement and/or On Suicide Watch*

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from punishment that may not constitutionally be inflicted upon pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). *See also Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) ("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process Clause."). Under the Fourteenth Amendment, the conditions of confinement imposed upon a pretrial detainee must not amount to "punishment." *Bell*, 411 U.S. at 535. The Court of Appeals for the Third Circuit has employed a two-part test for courts to use in determining whether a condition of confinement imposed on pretrial detainees amounts to a punishment: (1)

whether "legitimate purposes are served" by the condition; and (2) whether the "conditions are rationally related to these purposes." *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008). "Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the condition of confinement] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Bell*, 441 U.S. at 538. The Due Process Clause does not create a liberty interest for an inmate to remain among the general prison population and "the Due Process Clause does not in itself . . . subject treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

In this case, Plaintiff alleges that his placement in solitary confinement and/or on suicide watch violated his due process rights under the Fourteenth Amendment. While Plaintiff's complaint does not paint the entire picture of his confinement and does not include specific allegations concerning the amount of time that he spent in solitary confinement or on suicide watch, or the physical conditions or restrictions of his confinement, his claims necessitate a factual inquiry into whether his placement in solitary confinement or on suicide watch could be construed as a punishment or whether his placement was for some legitimate government purpose. Specifically, Plaintiff alleges that unnamed prison officers placed him on suicide watch or in solitary confinement at the direction of Warden Elbel. Plaintiff alleges that he was placed on suicide watch and/or solitary confinement after complaining to the medical staff about his inadequate medical treatment. These allegations require greater factual development in order to determine how these conditions of confinement came to be imposed upon Plaintiff. Accordingly, Plaintiff should be permitted to conduct discovery to determine whether the decision to place him in solitary confinement and/or on suicide watch violated his liberty interest under the Fourteenth

Amendment, and therefore, Plaintiff's Fourteenth Amendment due process claim will be permitted to proceed against the Defendants.

### iii. First Amendment Retaliation[5]

The First Amendment of the Constitution guarantees "the right of people . . . to petition the Government for a redress of grievances." U.S. Const., Amend. I. This right is related "to the protection afforded to speech and 'is an assurance of a particular freedom of expression.'" *Arneault v. O'Toole*, 513 Fed. Appx. 195, 198 (3d Cir. 2013) (quoting *McDonald v. Smith*, 472 U.S. 479, 482 (1985)). "The First Amendment prohibits government officials from subjecting an individual to retaliatory actions...for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "[T]he right to petition extends to all departments of the Government, including administrative agencies, . . . and encompasses formal and informal complaints, . . . about matters of public and private concern." *Arneault*, 513 Fed. Appx. at 198 (internal citations and quotation marks omitted) (finding no difference between retaliation against "an individual for exercising his rights under the First Amendment or directing the company of which he is a fiduciary to do so.").

To adequately state a claim for retaliation under the First Amendment, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). In making this determination, the "key question" is whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Thomas*, 463

---

[5] No Defendant read Plaintiff's Third Amended Complaint as including a First Amendment retaliation claim. However, because it is the court's duty to read a *pro se* plaintiff's complaint with a measure of tolerance, *Boag*, 454 U.S. at 364, the court will address the merits of this claim.

F.3d at 296 (citations and quotation marks omitted). "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*, 523 U.S. 574, 589 (1998).

Plaintiff alleges that he was placed in solitary confinement and/or suicide watch after he complained about the inadequacy of his medical treatment. Plaintiff alleges that after he issued these complaints to JCJ medical staff, unnamed prison officers placed him on suicide watch and/or in solitary confinement at Warden Elbel's direction. These allegations require greater factual development in order to determine whether Plaintiff was allegedly retaliated against by complaining about his allegedly inadequate medical treatment and what circumstances required him to be placed on suicide watch and/or in solitary confinement. Accordingly, Plaintiff's First Amendment retaliation claim will be permitted to proceed to discovery against the individual defendants Warden Elbel, Dr. Rossino, Dr. Calvert, PA-C Clark and LPN Purce.

### iv. Conspiracy claim pursuant to 42 U.S.C. § 1983

To prevail on a conspiracy claim pursuant to section 1983, "a plaintiff must prove that persons acting under color of law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). "[T]o properly plead an unconstitutional conspiracy claim, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citations omitted) (noting conspiracy requires a "meeting of the minds.").

Plaintiff's Third Amended Complaint is extremely vague on what factual basis he seeks to allege a conspiracy claim. Plaintiff instead makes fleeting remarks throughout his operative complaint about a "conspiracy." Reading Plaintiff's operative complaint liberally, he seemingly alleges that the Defendants conspired to be deliberately indifferent to his serious medical needs by

page number

denying him adequate medical care because of cost considerations. However, because it is not deliberately indifference to take costs into consideration in treating pretrial detainees, *see Winslow*, 406 Fed. Appx. at 674, and because there must be a predicate violation under section 1983 to state a section 1983 conspiracy claim, this claim is dismissed with prejudice, as Plaintiff has previously amended his complaint and amendment would be futile. *Holt Cargo Sys., Inc. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) *aff'd*, 165 F.3d 242 (3d Cir. 1999) (to state a claim for conspiracy under section 1983, there must be a predicate section 1983 violation). *See also Grayson*, 293 F.3d at 114.

        d.  Remaining State Law Claims

        i.  *Political Subdivision Tort Claims Act*

Warden Elbel moves to dismiss Plaintiff's state law claims of medical negligence, corporate negligence and negligent infliction of emotional distress ("NIED") levied against him by arguing that such claims are barred by the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S.A. 8541 *et seq*. Because the court construes Plaintiff's complaint as only setting forth a claim of NIED against Warden Elbel, the court will only address whether the PSTCA renders Warden Elbel immune from Plaintiff's NIED claim.[6]

The PSTCA renders political subdivisions and their employees immune for negligent acts except under limited circumstances that are defined by statute.[7] 42 Pa. Cons. Stat. § 8545;

---

[6]     To be clear, even if Plaintiff sought to set forth a claim of medical malpractice and corporate negligence against Warden Elbel, those claims would fail, as Warden Elbel is not a medical care provider, nor is he a medical care facility. *See Miller v. Sacred Heart Hosp.*, 753 A.2d 829 (Pa.Super. 2000); *Thompson v. Nason Hosp.*, 591 A.2d 703, 706 (Pa. 1991).

[7]     These exceptions include: (i) the operation of motor vehicles; (ii) the care, custody or control of personal property; (iii) the care, custody or control of real property; (iv) a dangerous condition of trees, traffic controls and street lighting; (v) a dangerous condition of stream, sewer, gas or electric systems; (vi) a dangerous condition of streets; (vii) a dangerous condition of sidewalks; and (viii) the care, custody and control of animals. 42 Pa. Cons. Stat. § 8542(b). These

*Patterson v. Armstrong County Children and Youth Services*, 141 F. Supp. 2d 512, 543-44 (W.D. Pa. 2001). A cause of action for negligent infliction of emotional distress is predicated upon a finding of common law negligence. *See Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 198 (Pa.Super. 2008) (under a theory of recovery for NIED, a plaintiff must establish the elements of a negligence claim, "*i.e*., that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage.") (collecting cases). Because NIED is not an enumerated exception to the PSTCA, Warden Elbel is entitled to immunity for this claim and it will be dismissed with prejudice as to this defendant, as amendment would be futile. *See Doe v. Old Forge Borough*, 2015 WL 4041435, at *8 (M.D.Pa. 2015) (finding a claim for NIED is barred by the PSTCA); *Grayson*, 293 F.3d at 114.

### ii. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania law, the Plaintiff must allege the following with regard to the defendant's conduct: (1) it was extreme and outrageous; (2) intentional or reckless; and (3) it caused severe emotional distress. *Dingle v. Centimark Corp.*, 2002 WL 1200944, at *8 (E.D. Pa. June 3, 2002) (citing *Wisniewski v. Johns Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987)). The Restatement (Second) of Torts provides guidance as to what constitutes extreme and outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is

---

exceptions must be strictly construed. *Lindstrom v. City of Corry*, 763 A.2d 394 (Pa. 2000).

one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

Restatement (Second) of Torts, § 46, comment d. It is for the court to determine whether the conduct can be regarded as so extreme and outrageous so as to permit recovery. *Dawson v. Zayre Dep't Stores*, 499 A.2d 648, 649 (Pa. Super. 1985). Where reasonable minds may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability. Restatement (Second) of Torts, § 46, comment h.

In the instant matter, Plaintiff's allegation that the Defendants failed to give him adequate medical care does not rise to the level of extreme and outrageous. According to Plaintiff, the medical Defendants failed to give Plaintiff adequate medical testing in the form of an MRI scan for his back injuries for a period of six months. Plaintiff alleges that he received medical treatment during that time frame, however, he disagrees with the level of treatment that he received. Such conduct is not extreme and outrageous to state a claim for IIED, as the degree of delay of medical treatment is not so outrageous in character and so extreme in degree so as to go beyond all possible bounds of decency to be regarded as atrocious and utterly intolerable in a civilized society. As for Plaintiff's complaints that he was placed on suicide watch and/or in solitary confinement for complaining about the allegedly inadequate medical treatment, this claim requires greater factual development in order to determine whether his placement on suicide watch and/or in solitary confinement was "extreme and outrageous." To the extent that Defendants argue that Plaintiff has

not adequately alleged specific facts regarding Plaintiff's "severe emotional distress," Plaintiff should be provided the opportunity to support his allegations of "severe emotional distress" with adequate discovery. Should Plaintiff fail to do so, the Defendants may raise this argument at the appropriate juncture.

Accordingly, Plaintiff's claim for IIED is dismissed with prejudice as amendment would be futile as to his claim that he received inadequate medical treatment. *Grayson*, 293 F.3d at 114. However, Plaintiff's claim for IIED that he was placed on suicide watch and/or in solitary confinement for complaining of his inadequate medical treatment against Warden Elbel, Dr. Rossino, Dr. Calvert, PA-C Clark and LPN Purce will be permitted to proceed.

### iii. *Negligent Infliction of Emotional Distress*

Plaintiff's negligent infliction of emotional distress ("NIED") claim against Defendants Prime Care, Dr. Rossino, Dr. Calvert, PA-C Clark and LPN Purce is based on the medical defendants denying Plaintiff adequate medical care.[8]

A federal district court exercising its supplemental authority over state law claims must apply the state law as interpreted by the state's supreme court. *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 825 (3d Cir.1994) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). While "[t]he parameters of an NIED claim in Pennsylvania are currently unresolved[,]" *Hershman v. Muhlenberg College*, 17 F.Supp.3d 454, 458 (E.D.Pa. 2014) (citing *Toney*, 36 A.3d 83 (2011)), the Pennsylvania Supreme Court has recognized three types of NIED claims: (1) where a plaintiff suffers a physical injury which causes the emotional distress; (2) where the plaintiff did not suffer a personal impact but was in the zone of danger; and (3) where the plaintiff witnesses an accident

---

[8] Because the Court has previously found that Warden Elbel is entitled to immunity under the PTSCA, only the remaining defendants will be discussed.

causing serious injury to a close family member. *Hershman*, 17 F.Supp.3d at 459 (collecting cases).

The medical defendants argue that Plaintiff has failed to allege any physical manifestation arising out of any emotional distress, and his claim should be dismissed. *See Toney*, 961 A.2d at 200 (to state a claim for NIED, there must be a physical manifestation of the emotional distress). Discovery may reveal that Plaintiff's emotional distress from being allegedly denied adequate medical care manifested physically. Therefore, Defendants Prime Care, Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce's motions to dismiss are denied in this respect.

### iv. Medical Malpractice and Corporate Negligence

Plaintiff levies a medical negligence claim against Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce for their failure to provide him with adequate medical care. Plaintiff also asserts a corporate negligence claim against Prime Care.

First, the Defendants seek dismissal of these claims by arguing that Plaintiff has failed to substantiate his claims by submitting a certificate of merit ("COM") with his Third Amended Complaint pursuant to Pennsylvania law. Likewise, Dr. Rossino asks this court to convert his motion to dismiss on this issue into one for summary judgment and argues that expert testimony is necessary to substantiate Plaintiff's claims. Plaintiff stands by his originally filed COM stating that he does not need expert testimony to substantiate these claims, but, alternatively argues that if the court should find that his claims require a COM, he be granted leave to file such submissions.

Pennsylvania law requires that a plaintiff file a COM within sixty days of commencing any action that is based upon an allegation that a licensed professional deviated from an acceptable professional standard. Pa. R. Civ. P. 1042.3(d). This rule is "substantive state law that must be applied" by federal district courts. *Schmigel v. Uchal*, 800 F.3d 113, 115 (3d Cir. 2015). This rule

applied to incarcerated and *pro se* plaintiffs. *Perez v. Griffin*, 304 Fed. Appx. 72, 74 (3d Cir. 2008) (unpublished). There is an exception to this rule which permits a plaintiff to certify that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Pa. R. Civ. P. 1042.3(a)(3). This exception has been construed as "very narrow" and only applies "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Toogood v. Owen J. Rogal*, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003). The effect of filing a COM that certifies that no expert testimony is necessary for the prosecution of the claim is a "prohibition against [the plaintiff] offering expert testimony" absent exceptional circumstances. *Culver v. Specter*, 1:CV-11-2205, 2014 WL 4717836, at *3 (M.D. Pa. Sept. 22, 2014). A COM filing indicating that expert testimony is unnecessary "allows the case to proceed to discovery, leaving the consequences of choosing to proceed without expert testimony to be dealt with at a later stage of the litigation, such as summary judgment or trial." *Id.*

Defendants' arguments that Plaintiff's medical negligence and corporate negligence claims should be dismissed for failure to submit a COM must fail. First, Plaintiff in fact filed a COM on September 24, 2016 indicating that expert testimony is unnecessary to support his medical malpractice and corporate negligence claims, as the "[f]acts of this case do not present issues of medical treatment so complex that they are beyond the ability of an ordinary juror to understand without the aid of expert testimony." Pl.'s COM [ECF No. 33] at ¶ 3. The practical effect of Plaintiff filing such a submission is that the case may proceed to discovery, however, Plaintiff may not be permitted any expert testimony to support his medical malpractice or corporate negligence claims. The lack of such supporting testimony will be dealt with on summary judgment. Perhaps realizing this, Dr. Rossino asks this court to use its discretion to convert the present motion to

dismiss into one for summary judgment and argues that discovery is not needed to show that expert testimony is necessary to establish causation and the standard of care for Plaintiff's medical treatment. Dr. Rossino argues that because Plaintiff has certified he does not need expert testimony to establish his claims, he is entitled to judgment in his favor. The court declines to convert Dr. Rossino's motion to dismiss into one for summary judgment, as the effect of Plaintiff's COM is that he will not be entitled to any expert discovery in this case. The Defendants may be correct that expert testimony is necessary for Plaintiff's negligence claims to proceed past summary judgment, the court will therefore deny Defendants' motions to dismiss and/or for summary judgment without prejudice to raise these arguments following discovery.

Further, the court must address Plaintiff's response that if the court determines that a COM is necessary, he be afforded the opportunity to submit responsive COMs. A determination that Plaintiff's claims require expert testimony requires more detailed argument than an alternative request from Plaintiff. More importantly, Plaintiff has already decided that his claims do not require expert testimony by his own submission. If Plaintiff sought for this court to determine whether a COM was unnecessary in the first place, it was incumbent upon him to file an appropriate motion before submitting his COM indicating he did not need expert testimony to substantiate his claims. Accordingly, Plaintiff's claim may proceed to discovery "leaving the consequences of choosing to proceed without expert testimony to be dealt with at a later stage of litigation[.]" *Culver*, 2014 WL 4717836, at *3.

### e. Punitive Damages

The Defendants move to dismiss Plaintiff's punitive damages claims. It is premature at this point to dismiss a claim for punitive damages, as "[t]he propriety of punitive damages is determined by a plaintiff's proof." *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F.Supp.2d

494, 512 (D.N.J. 1999). Therefore, the Defendants' motions to dismiss are denied without prejudice in this respect, and Defendants may revisit the issue at the appropriate juncture.

## V. CONCLUSION

Based on the foregoing, Defendants' motions to dismiss are granted in part and denied in part. The following claims are dismissed with prejudice:

(1) Plaintiff's claim for injunctive and declaratory relief against all Defendants;

(2) Plaintiff's 42 U.S.C. § 1983 claim for deliberate indifference to serious medical needs pursuant to the Fourteenth Amendment against Warden Elbel;

(3) Plaintiff's 42 U.S.C. § 1983 claim for deliberate indifference pursuant to the Fourteenth Amendment against Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce insofar as he alleges that he was denied medical treatment due to cost, and that he was denied medical treatment due to the rescheduling of appointments;

(4) Plaintiff's 42 U.S.C. § 1983 claim for deliberate indifference in violation of the Fourteenth Amendment pursuant to Monell against Prime Care;

(5) Plaintiff's 42 U.S.C. § 1983 conspiracy claim against all Defendants; and

(6) Plaintiff's negligent infliction of emotional distress claim against Warden Elbel.

The following claims remain:

(1) Plaintiff's 42 U.S.C. § 1983 claim for deliberate indifference pursuant to the Fourteenth Amendment against Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce insofar as Plaintiff alleges that their decision to not order an MRI for Plaintiff and/or refer him to a specialist for six months was deliberately indifferent to his serious medical needs;

(2) Plaintiff's 42 U.S.C. § 1983 claim for due process violations pursuant to the Fourteenth Amendment against Warden Elbel, Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N.

Purce for Plaintiff's placement in solitary confinement and/or on suicide watch;

(3)     Plaintiff's 42 U.S.C. § 1983 claim for retaliation in violation of the First Amendment against Warden Elbel, Dr. Rossino, Dr. Calvert, PA-C Clark and LPN Purce;

(4)     Plaintiff's NIED claim against Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce;

(5)     Plaintiff's intentional infliction of emotional distress claim against all Defendants;

(6)     Plaintiff's medical negligence claim against Dr. Rossino, Dr. Calvert, PA-C Clark and L.P.N. Purce;

(7)     Plaintiff's corporate negligence claim against Prime Care; and

(8)     Plaintiff's claim for punitive damages.

An appropriate order follows.

Dated: December 5, 2017                             By the Court,
                                                    s/ Cynthia Reed Eddy
                                                    Cynthia Reed Eddy
                                                    United States Magistrate Judge

cc:     SHAWN LEE WHITENIGHT
        182 Evansville Road
        Berwick, PA 18603

        all registered counsel via CM-ECF